**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald MARKOWSKI,**
**Defendant-Appellant.**

No. 84–1874.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1985.

Decided Sept. 10, 1985.

Rehearing Denied Nov. 1, 1985.

William T. Grimmer, Asst. U.S. Atty., R. Lawrence Steele, U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Roy E. Black, Black & Furci, Miami, Fla., for defendant-appellant.

Before FLAUM and EASTERBROOK, Circuit Judges, and WEIGEL, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

Ronald Markowski was the kingpin of a marijuana and cocaine smuggling operation. The district court sentenced him to 45 years' imprisonment without possibility of parole under the Continuing Criminal Enterprise statute, 21 U.S.C. § 848, and fined him $100,000. Other sentences under four other statutes run concurrently with this one, making the CCE count the principal object of our attention.

## I

From 1977 through 1982 Markowski led a large group of smugglers who moved marijuana and cocaine from Colombia to Indiana via the Bahamas. The indictment named 41 defendants and many other unindicted conspirators. We affirm the conviction of a defendant who manned an airfield in the Bahamas in *United States v. Molt*, No. 84-3164, also decided today. More than 49,800 pounds of marijuana and 4,100 pounds of cocaine were imported during the course of the conspiracy. The smuggling operation was run like a business, with investors, secretaries, wholesalers, drivers, pilots, and off-loaders all on the operation's payroll. Markowski used a family-owned trucking business, located in East Chicago, Indiana, as one front for his smuggling operation.

Most of the evidence came from smugglers who cooperated with the prosecution. We narrate it in the light most favorable to the Government. In 1977 Markowski joined with two other smugglers to fly marijuana from Colombia to the United States. The aircraft used in this initial operation was purchased through the family business and used only for smuggling. The plane once crashed in Colombia. Markowski flew to Colombia to rescue his pilots and met a Colombian named Moses who later became his major source of drugs.

Markowski continued his smuggling operation in 1978 with at least two other planes. Witnesses testified to specific importations of 1,000 pounds of marijuana in March 1978 and several other importations during the summer of 1978. Sometime in 1978 Markowski ended his association with his original partners and joined with Frank Brady (still a fugitive), George Chiattello (who pleaded guilty), and Terry Lowe (still to be tried) in a larger venture.

The new operation was more structured. Markowski and Lowe had an attorney form a corporation, Marlowe International Investments. The corporation was used to hide Markowski's interest in an aircraft used for smuggling. One of Markowski's pilots was named president of the corporation. The Marlowe aircraft was used repeatedly between December 1979 and July 1980 to import marijuana from Colombia. The smuggling continued throughout 1981 and 1982. The normal course of any trip was from Colombia to a stopover in the Bahamas for refueling. The next stop was Georgia or Florida, where the marijuana would be unloaded. The marijuana would then be transported to Northern Indiana or Chicago for distribution.

In 1982 Markowski expanded his operation to include cocaine. The evidence showed not only the importation of planes full of cocaine but also two deliveries of cocaine by Markowski to the offices of the family trucking business.

## II

■ The CCE offense has five elements: (1) a predicate offense violating a specified drug law (2) as part of a "continuing series" of drug violations (3) that occurred while the defendant was acting in concert with five or more other people (4) to whom the defendant occupied the position of an organizer or manager and from which ser-

* The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, is sitting by designation.

ies the defendant (5) obtained substantial income or resources. *Garrett v. United States,* — U.S. —, 105 S.Ct. 2407, 2415, 85 L.Ed.2d 764 (1985), describing 21 U.S.C. § 848(b). Section 848 is "designed to reach the 'top brass' in the drug rings...." *Garrett,* 105 S.Ct. at 2413. See also *United States v. Ambrose,* 740 F.2d 505 (7th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

■ Markowski's principal argument is based on the compound nature of the offense. The prosecution must establish both the predicate offenses and the managerial role. The indictment charged Markowski with two substantive drug offenses, on which he was convicted. Because of the convictions on these predicate offenses, he asserts, the Double Jeopardy Clause of the Fifth Amendment prevents his conviction of the CCE offense, which he characterizes as a "greater" offense arising from the same facts. We accepted this argument in *United States v. Jefferson,* 714 F.2d 689 (7th Cir.1983). The Supreme Court rejected an identical argument in *Garrett.* Our holding on this issue in *Jefferson* therefore is no longer controlling, and the double jeopardy objection to the CCE charge fails.

The fact that Markowski was convicted on only two predicate offenses affords him several additional arguments. The parties agreed at trial that a "continuing series" of violations means three or more substantive violations of the drug laws.[1] Markowski argues that § 848 requires three *convictions,* not just three violations. Because the only convictions were on the two counts of distributing cocaine, Markowski says that the Government is one short. The prosecutor responds that "violations," rath-

er than convictions, are enough. The jury was instructed that the overt acts alleged in support of the two conspiracy charges could be used to establish a continuing series of violations.

■ The language of § 848(b)(2) refers to a "continuing series of violations" of the drug laws but does not define "violation." Several courts have understood "violation" to refer to an offense, whether or not the offense led to conviction. See *United States v. Young,* 745 F.2d 733, 747 (2d Cir.1984) (collecting cases), *cert. denied,* — U.S. —, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). As the Supreme Court emphasized in *Garrett,* 105 S.Ct. at 2412–15, the CCE statute is not a sentence enhancement provision or an aggravated version of an offense. It is a distinct crime that entails the supervision of a substantial criminal enterprise. What is important is proof that there was indeed a far-flung operation. Whether this has led to other convictions is all but irrelevant to the nature of the CCE offense. This leads us to interpret "violation" in the natural way as an offense, not as a conviction.

The structure of the statute reinforces the conclusion. The penalty provision in § 848(a) provides for additional enhancement in the event of multiple convictions: "any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years ..., to a fine of not more than $100,000, and to ... forfeiture ...; except that if any person engages in such activity after one or more prior *convictions* of him under this section, he shall be sentenced to a term of imprisonment which may not be less than 20 years ..." (empha-

---

1. The prosecutor has changed his mind on appeal, arguing that a conviction for conspiracy under 21 U.S.C. § 846 also may be a predicate offense. The indictment charged Markowski with two § 846 conspiracies. But because of the prosecutor's concession this was not litigated in the district court. More, because of *Jefferson, supra,* 714 F.2d at 702 n. 27, the court instructed the jury that if it found a violation of the CCE statute it should not even return a verdict on the conspiracy counts. The jury followed this instruction. We therefore have no

occasion to determine whether *Garrett* and cases such as *United States v. Young,* 745 F.2d 733 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985), and *United States v. Jones,* 763 F.2d 518, 524–25 (2d Cir. 1985), now permit the use of convictions under § 846 as predicate offenses. Certainly a district court should not again tell a jury to return no verdict on a § 846 charge. The jury should find the facts, and then the court should enter whatever judgment is appropriate under the legal rules.

sis added). Subsection (b), in contrast, refers only to "violations." We do not think that Congress used two different words in the same section of the statute to mean the same thing. None of the legislative history, which *Garrett* discusses in detail, leads to a contrary conclusion.

This interpretation of § 848 draws some support from *Sedima, S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The Second Circuit held that the plaintiff in a private civil action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68, must prove that a defendant has been convicted of the predicate acts establishing a pattern of racketeering activity. 741 F.2d 482 (2d Cir.1984). The Supreme Court disagreed and held that under RICO the plaintiff must show "only to a failure to adhere to legal requirements." 105 S.Ct. at 3281 (citations omitted). RICO and CCE were passed at different times, but they have similar structures. Each is a compound offense in which multiple violations of criminal statutes are essential to a conviction of the new offense. The similar structure of the two laws leads to a conclusion that convictions are not necessary to establish predicate offenses for either statute.

Markowski maintains that even if this is so, the jury was improperly instructed. The court gave a detailed instruction on the elements of the CCE offense. The court told the jury that it first had to find a violation of one of the following drug laws (§ 848(b)(1)):

(1) It shall be unlawful for any person knowingly or intentionally to distribute or possess with intent to distribute the controlled substances marijuana or co-

caine. Title 21, United States Code, Section 841(a); or

(2) It shall be unlawful to import into the United States from any place outside thereof the controlled substances marijuana or cocaine. Title 21, United States Code, Section 952(a).

The court then told the jury that it had to find three or more violations of these laws.[2] In subsequent instructions the court explicated the meaning and elements of the possession and distribution offenses, in the course of describing the substantive cocaine crimes with which Markowski had been charged. But it did not give a similarly full treatment to the importation offense. Markowski therefore says that the instruction was defective—it told the jury that it could use violations of § 952(a) as predicate offenses, but it did not tell the jury that importation is unlawful only if done "intentionally and knowingly." The Government apparently concedes that intent is an element of § 952(a). See, e.g., *United States v. Ledezma-Hernandez*, 729 F.2d 310 (5th Cir.1984); *United States v. Restrepo-Granda*, 575 F.2d 524 (5th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978). It asserts, however, that Markowski did not preserve this claim of error.

Markowski presented the court with an instruction on the mental element of the importation offense. But he never pointed out that the final set of instructions omitted mention of this element. Fed.R. Crim.P. 30 provides that "no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." See *United States v. Bush*,

---

**2.** Markowski briefly argues that the court erred by not limiting the jury's consideration to the offenses designated as overt acts of one or another conspiracy. He did not preserve the argument at trial, however. His brief here points to five occasions on which a witness testified to a substantive violation that had not been listed as an overt act. Counsel did not object to the admission of any of this testimony at trial and did not propose an instruction limiting the

jury's consideration to offenses listed as overt acts. We therefore need not decide whether to follow cases such as *United States v. Becton*, 751 F.2d 250 (8th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985), and *United States v. Sterling*, 742 F.2d 521 (9th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985), which permit a jury to convict on a CCE charge even though the predicate offenses were not specifically enumerated.

749 F.2d 1227, 1233 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1771, 84 L.Ed.2d 831 (1985). This court repeatedly has held that the "mere offer" of an instruction does not satisfy Rule 30 or preserve a claim for appeal. *United States v. Jackson,* 569 F.2d 1003, 1009 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978) (instruction tendered twice); *United States v. Clavey,* 565 F.2d 111, 118 (7th Cir.1977), *modified on other grounds,* 578 F.2d 1219 (7th Cir.1978).

This case illustrates the reasons why. The instructions were very long, and some instructions (including the one on CCE) relied on others (such as the charge on the substantive cocaine offenses) for completeness. It is easy to overlook something in such a set of instructions. Unless counsel points precisely to the instruction or omission in question, a general objection will not alert the court to the problem. The fact that a party has tendered an instruction is all but irrelevant once the court drafts its own. The court may mean to give all of the elements of the defendant's tendered instruction but slip up. Unless the defendant calls the error to the court's attention, the fact that the defendant has a proper instruction on file does no one any good.

■ Markowski asked for instructions on the elements of the predicate offenses, and the court complied with this request in every respect but one. When Markowski's counsel objected in general to the lack of instructions on the elements, he failed to inform the court which one in particular was missing. The repeated, but repeatedly general, objection may have misled the court, which doubtless thought it had defined all of the elements of the predicate offenses somewhere in the instructions. Markowski's counsel should have pointed out what the judge overlooked. Markowski's counsel "was in the best position to avoid this problem and he failed to act." *Jackson, supra,* 569 F.2d at 1010. He therefore has not preserved the objection under Rule 30.

■ The omission was not "plain error" within the meaning of Rule 52(b). It was "plain" in the sense that had the judge realized what was missing, doubtless he would have set things straight. But this is not the meaning of "plain error" under the Rule. To determine "whether a defect in a jury instruction is plain error, we must examine the entire record before us and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *Jackson, supra,* 569 F.2d at 1010. See also *Bush, supra,* 749 F.2d at 1233; *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). That inquiry leads to a conclusion that the omission was not plain error.

There were numerous charges on mental elements. There was one for the CCE offense itself, one for the substantive counts, one for each of the other counts of liability. Two of the three predicate offenses (possession and distribution) had mental elements explicitly attached. Nothing in the instructions even hinted that the importation offense might be a strict liability crime.

The importance of the mental element would not have occurred to the jury because of the nature of Markowski's defense. As Markowski's brief describes things, the only contested factual issues "primarily concerned whether the cooperating witnesses were lying or not." Markowski's own testimony was a blanket denial that any importation or distribution had occurred. This was not a case in which the accused admitted that he flew planes on which drugs were found but denied knowledge that drugs were on board. Cf. *United States v. Rada-Solano,* 625 F.2d 577 (5th Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 482 (1980); *United States v. Restrepo-Granda, supra.* Once the jury rejected the claim that the witnesses made everything up—which it plainly did—nothing remained but to convict on the overwhelming evidence provided by Markowski's fellow smugglers. See *Jackson, supra,* 569 F.2d at 1010. Indeed, the

jury's rejection of Markowski's blanket denial left it with credited evidence of a score of possession and distribution violations, supporting the CCE conviction without regard to any importation offenses. We therefore conclude that the omission is not "plain error" as we have construed that term.

■ The final challenge to the conviction on the CCE offense is that the judge did not require the jury to agree unanimously on the identity of at least five people who acted under Markowski's supervision. The statute does not make the identity of the five important, however. The CCE statute is directed against all enterprises of a certain size; the identity of those involved is irrelevant. 21 U.S.C. § 848(b)(2)(A). The court told the jury that it had to agree unanimously that there were five or more subordinates. So long as each juror believed that Markowski supervised enough people, the jury was entitled to convict. All other courts that have addressed this question have come to the same conclusion. *United States v. Jones,* 712 F.2d 1316, 1322 (9th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *United States v. Mangieri,* 694 F.2d 1270, 1279–81 (D.C.Cir.1982); *United States v. Raffone,* 693 F.2d 1343, 1347–48 (11th Cir.1982), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983).

### III

Markowski was convicted of six violations of the Travel Act, 18 U.S.C. § 1952, because of his interstate movements to carry out prohibited acts. His principal argument here is that the district court should have given a specific intent instruction concerning the Travel Act offenses.

■ The court adequately described and defined for the jury the elements of the Travel Act. The court read the statute in its entirety and separately stated that the interstate travel must be done "with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on of any unlawful activity, involving marijuana or cocaine."

The court then said that the jury may infer intent from all "facts and circumstances" surrounding Markowski's acts. It did not further define what "intent" means. The court also told the jury that Markowski could be guilty under 18 U.S.C. § 2 if he "wilfully causes an act to be done" that would be criminal if Markowski had performed it himself. A separate instruction defined wilful to mean that "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law."

The instruction on § 2 was more than enough. The instruction on the Travel Act itself left "intent" undefined. This is a troubling omission, because the defendant must intend to carry on or facilitate a prohibited activity through the travel. The omission of a more detailed instruction may have confused the jury about whether the illegality of the promoted activity need be present to the defendant's mind during the travel. Only because the intent requirement does not reach quite this far, cf. *United States v. Vanichromanee,* 742 F.2d 340, 349–50 (7th Cir.1984); *United States v. McPartlin,* 595 F.2d 1321, 1361 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States v. Craig,* 573 F.2d 455, 489 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978), are we able to sustain this instruction.

There are very subtle distinctions among kinds of "intent." The Model Penal Code recognizes four mental states—purpose, knowledge, recklessness and negligence—with elaborations possible for each. Model Penal Code § 2.02; cf. *Liparota v. United States,* —— U.S. ——, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The distinctions among them tax the greatest interpreters. The piling of explanation on explanation in an effort to clarify what intent means may have the opposite effect. We have therefore held that with rare exceptions, see *United States v. Barclay,* 560

F.2d 812 (7th Cir.1977), a court need not elaborate for the jury on the differences between general and specific intent. *United States v. Brown,* 739 F.2d 1136, 1143 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984); *United States v. Arambasich,* 597 F.2d 609, 611 (7th Cir.1979). A jury should be told only what it needs to know, not what might confuse.

■ The jury was told what it needed to know here—that the intent element of the Travel Act applies to the purpose of the travel. The defendant must intend that the travel promote or carry on an unlawful activity. The jury was told this. The court defined "knowingly" and "wilfully" in separate instructions. Further elaboration about intent would not have brought further enlightenment. If the jury believed that Markowski travelled (or wilfully caused others to travel) for the purpose of promoting or carrying on his smuggling acts, it would have had no further questions on which elucidation would have helped. We would be troubled by a guidance-free instruction such as this one when the defendant puts in issue questions concerning the degree of his mental awareness. If Markowski had claimed, for example, that he travelled with reckless indifference to the consequences for the smuggling venture, the court would have been well advised to elaborate a little on the meaning of intent. But the instruction, simple though it was, was adequate to the purpose of this trial, which raised none of the nuances about mental states that have so vexed courts in the past.[3]

■ Although the instructions were adequate, the evidence on one of the Travel Act counts does not establish an offense. Count 29 charged that on December 9, 1982, Markowski caused John Parker to travel from Elkhart, Indiana, to Chicago, Illinois, to promote his drug operation by buying Parker dinner in the hopes of ob-

taining favorable treatment for Markowski's family business. Parker had been a friend of Markowski's for at least ten years before the smuggling operation began. In the late 1960s the Markowski family trucking company, E.L.M. Enterprises, began to carry goods for Miles Laboratory, Parker's employer. ELM struggled to keep some of Miles's business when Miles changed its production needs, which required ELM to purchase new types of trucks. Parker, the production manager, was able to influence whether Miles would continue to use ELM. Markowski cultivated Parker as a friend for social as well as business reasons. But the connection between Parker and Markowski was a direct result of a legitimate business relation between ELM and Miles. Parker apparently had nothing to do with smuggling.

The Government contends that when Markowski flew Parker to Chicago for dinner he was in fact furthering his drug enterprise by trying to keep one of his fronts for the drug enterprise afloat. If this is enough to violate the Travel Act, however, then everything ELM did—including carrying Miles's goods from one state to another—violated the Act. The statute does not make every legitimate act unlawful on the ground that legitimate acts help hide illegitimate ones. The Act is broad, but it is not yet unlawful to take a legitimate business friend to dinner to promote lawful business. The evidence on this count fails to establish that Markowski caused the interstate travel with the intent to promote an illegal activity. The travel related to the illegal activity only incidentally, which is not enough. *Vanichromanee, supra,* 742 F.2d at 349; *United States v. Raineri,* 670 F.2d 702, 717 (7th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982) (travel "must relate significantly, rather than incidentally or minimally, to the illegal activity").

---

**3.** Both the prosecutor and counsel for Markowski requested a more detailed instruction. This case once again illustrates the wisdom of our caution in *Barclay, supra,* 560 F.2d at 815 n. 2, that a court should have good reasons before declining to give an instruction tendered by both sides. A more cautious approach here would have averted a difficult issue.

## IV

Markowski attacks all of his convictions on the ground that the court admitted a statement by James Millsap, one of Markowski's underlings, that Markowski warned Millsap not to cooperate with the Government should it investigate his drug operation. Millsap testified that Markowski pointed to the open field in which they were standing and stated: "There's plenty of room out here, you know, for people to disappear and be buried and have lime thrown on top of their bodies." This testimony, Markowski tells us, does not comport with Fed.R.Evid. 401, 403, and 404(b) because it was irrelevant and its probative value was substantially outweighed by its undue prejudice. The Government argues that this testimony was admissible because the statement was made during the conspiracy and was designed to prolong the life of the conspiracy.

 The testimony is relevant. Statements of conspirators may be admitted to prove a conspiracy's existence. *United States v. Hickerson*, 732 F.2d 611, 615 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 159, 83 L.Ed.2d 95 (1984). The testimony was useful here because Markowski denied that any illegal drug enterprise existed and accused ex-employees such as Millsap of lying. Testimony about a death threat showed the lengths to which Markowski would go in order to protect the secrecy of his enterprise, and it tended to undercut Markowski's credibility as a witness.

With respect to the balancing of relevance and prejudicial effect under Rule 403, we accord "great deference" to the district court's decision. *United States v. Pizarro*, 756 F.2d 579 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985); *United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir.1985); *United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983). The court did not abuse its discretion here. During a hearing outside the presence of the jury, the court considered the question carefully and then admonished Millsap to relate only what he was told, not how he felt during or after the statements. The court also knew that testimony about another threat of death had been admitted without any objection by defense counsel, and it was entitled to believe that the jury's knowledge of yet another threat would not unduly undercut Markowski's defense.

The conviction on Count 29 is reversed. The convictions on all other counts are affirmed.