**UNITED STATES of America, Appellee,**

v.

**Kenneth A. POSSICK, a/k/a Kenneth Roberts, Appellant.**

No. 86–2356.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1988.

Decided June 15, 1988.

James Michael Merberg, Boston, Mass., for appellant.

Mitchell F. Stevens, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY and WOLLMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

A jury convicted Kenneth A. Possick of one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1986); three counts of use of a communication facility in committing, causing, or facilitating a conspiracy, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2; two counts of interstate travel in aid of racketeering, in violation of 18 U.S.C. §§ 1952, 2; one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and one count of conducting a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848. In addition, Possick was found guilty of one count of using or intending to use his home in Florida to facilitate the commission of a criminal offense, in violation of 21 U.S.C. § 853. The district court[1] sentenced Possick to terms of imprisonment ranging from four to fifteen years on each count save the CCE count, all to run concurrently, with a sentence of twenty years' imprisonment without parole imposed on the CCE count. The jury also found that Possick's house in Florida was subject to forfeiture, and the district court so ordered.

The evidence at trial showed that from late 1984 through 1985, Possick, a Florida resident, distributed large quantities of cocaine, primarily in St. Louis, Missouri. Possick arranged for several individuals to transport cocaine to St. Louis for delivery to various buyers. Possick ordinarily fronted or consigned the cocaine to these buyers. After the buyers sold the cocaine in the St. Louis area, they either sent pay-

---

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Mis-   souri.

ment to Possick pursuant to his directions, or they were met by someone Possick sent to collect. Although Possick did visit St. Louis to oversee his business, he conducted the majority of his transactions over the phone.

On appeal, Possick raises the following contentions: (1) that the evidence was insufficient to establish the supervisory or managerial element of a CCE violation, (2) that the district court erred in refusing to sever the CCE count, (3) that the district court erroneously allowed the introduction of several charts into evidence, (4) that the government made improper remarks during its closing arguments, (5) that the jury did not receive the appropriate guidance on the forfeiture count, and (6) that the conviction for both conspiracy and CCE cannot stand. We affirm the district court in all respects save the simultaneous convictions for conspiracy and CCE. We remand for the sole purpose of allowing the district court to vacate the conspiracy conviction. The convictions on all the other counts are affirmed, and Possick's sentence remains unaffected.

## I. Sufficiency of the Evidence for the CCE Conviction

We first note that our review of a jury verdict is limited to determining whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis retained). "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *see United States v. Wajda,* 810 F.2d 754, 761 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

■ To prove a CCE violation, the government must establish four elements: (1) a felony violation of the federal narcotics laws, (2) as part of a continuing series

of violations, (3) in concert with five or more persons for whom the defendant "occupies a position of organizer, a supervisory position, or any other position of management," and (4) from which the defendant derives substantial income or resources. 21 U.S.C. § 848(d); *Garrett v. United States,* 471 U.S. 773, 781, 105 S.Ct. 2407, 2413, 85 L.Ed.2d 764 (1985); *United States v. Tarvers,* 833 F.2d 1068, 1074 (1st Cir.1987). Possick claims that there was insufficient evidence for the jury to find that he organized, supervised, or managed five or more persons in conducting his drug business. He does not dispute the existence of the other CCE elements.

The basic outlines of the disputed management element have been liberally construed. *See United States v. Maull,* 806 F.2d 1340, 1343 (8th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987); *United States v. Lewis,* 759 F.2d 1316, 1331 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). The statute is written in disjunctive language, and the government need prove only that the defendant was an organizer, or a supervisor, or held some management role, not all three. *United States v. Dickey,* 736 F.2d 571, 587 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *United States v. Phillips,* 664 F.2d 971, 1013 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). The terms "organizer," "supervisory," and "management" have been given their plain meaning. *United States v. Oberski,* 734 F.2d 1030, 1032 (5th Cir.1984); *United States v. Mannino,* 635 F.2d 110, 117 (2d Cir.1980).

■ A defendant need not be the "king pin" or ultimate authority in the organization, but need only occupy some managerial position, *Maull,* 806 F.2d at 1343; *United States v. Becton,* 751 F.2d 250, 255 (8th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985), or perform a "central role." *Lewis,* 759 F.2d at 1331. The government need not establish that the defendant managed five people at once, that the five acted in

concert with each other, that the defendant exercised the same kind of control over each of the five, or even that the defendant had personal contact with each of the five. *See, e.g., Maull,* 806 F.2d at 1343; *United States v. Jones,* 801 F.2d 304, 308 (8th Cir.1986); *Becton,* 751 F.2d at 254–55. In essence, the management element is established by demonstrating that the defendant exerted some type of influence over another individual as exemplified by that individual's compliance with the defendant's directions, instructions, or terms. *See United States v. Grubbs,* 829 F.2d 18, 19–20 (8th Cir.1987) (per curiam); *United States v. Lueth,* 807 F.2d 719, 732 (8th Cir.1986); *Jones,* 801 F.2d at 310.

As Possick concedes that he managed two former co-defendants (Daniel Byers and Robert Lesmeister),[2] we need find only that there was sufficient evidence to support the jury's verdict with regard to three other individuals. We find that there was substantial evidence to support the jury's finding that Possick managed, supervised, or organized Keith Kalemis, Robert Bell, and Marjorie Byers, and we therefore affirm his CCE conviction.

### A. Keith Kalemis

The evidence at trial showed that from April to August of 1985, Keith Kalemis acquired cocaine from Possick on terms dictated by Possick. Possick gave the cocaine to Kalemis on consignment, or "fronted" it to him, and instructed him on how to arrange for collection of and payment for the drugs. On one occasion, Possick directed Kalemis to fly to Atlanta to make a $23,000 payment to Byers. Later, Possick instructed Kalemis to wire payment to Florida in Byers's name. On another occasion, Kalemis was instructed to make payment by way of a money order made out to a corporation owned by Byers. Possick also instructed Kalemis how to transact drug sales with one of his customers, although Kalemis did not follow this advice. In addition, Possick and Byers travelled to Kalemis's residence in St. Louis, where they beat him, forced him to ingest orally a large quantity of cocaine, and threatened to kill him if he did not promptly pay the money he owed to Possick. Thereafter, Byers often threatened Kalemis over the phone.

■ We find these facts ample to support the jury's finding that Possick exerted some type of influence over Kalemis. Although the mere "fronting" of cocaine alone is insufficient to support finding a management relationship, *Jones,* 801 F.2d at 308; defendants who arrange the acquisition of the drug, its delivery, and set the price and credit terms have been found to fill a " 'sufficiently central role' " to satisfy the requirements of the management element. *Grubbs,* 829 F.2d at 19–20 (quoting *Lewis,* 759 F.2d at 1331). *See also Lewis,* 759 F.2d at 1332 (defendant found to manage an individual who made three trips to purchase cocaine at the defendant's bidding); *Becton,* 751 F.2d at 253, 255 (defendant found to manage one individual who assisted the defendant in weighing and delivering a truckload of marijuana, and another individual who bought large quantities of marijuana from the defendant and made one large delivery of drugs according to the defendant's instructions); *Dickey,* 736 F.2d at 587–88 (defendant who set up meetings for drug transactions and dictated the terms of delivery and payment was found to occupy a managerial position).

■ Possick's relationship with Kalemis is well within the parameters of these cases. Furthermore, the use of force or threats to coerce payment is strong evidence of control. *Jones,* 801 F.2d at 308–09. Although Kalemis failed to follow Possick's directions in one instance, and apparently purchased cocaine from other drug dealers, this does not refute the evidence that Possick exerted some control over Kalemis. There is nothing in the language of the CCE statute, or the cases applying it, that requires the government to establish

---

**2.** Possick was indicted with six co-defendants, all of whom pleaded guilty to reduced charges and cooperated with and testified for the government, with the exception of Lesmeister, who was a fugitive at the time of Possick's trial.

that the defendant wielded absolute and exclusive control over his subordinates.

## B. Robert Bell

From late 1984 through the first half of 1985, Robert Bell purchased eighty ounces of cocaine from Possick for approximately $88,000. At all times Possick set the prices and the means of delivery and payment. Possick also instructed Bell that he was not to sell to Lesmeister, another former co-defendant, and tutored Bell in how to carry drugs through airport security without detection. Possick offered Bell an exclusive cocaine distributorship at the "Park Avenue," a Pompano Beach, Florida, lounge, although this was later given to another unidentified individual. In addition, on at least one occasion Possick used Bell's apartment to package cocaine that he was mailing elsewhere.

■ This evidence more than justifies the jury's finding of a management relationship between Possick and Bell. The enormous quantity of cocaine involved alone is indicative of a formal management relationship, *see Becton,* 751 F.2d at 253; *United States v. Samuelson,* 697 F.2d 255, 259 (8th Cir.1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1314, 79 L.Ed.2d 711 (1984), as is the regularity with which Possick and Bell transacted business. *See Jones,* 801 F.2d at 309. Dictating to whom a subordinate may sell, *see Jones,* 801 F.2d at 308; *Mannino,* 635 F.2d at 117, and instructing a subordinate on means of avoiding arrest or detection also indicate managerial control. *See Lewis,* 759 F.2d at 1333 (use of code words); *Mannino,* 635 F.2d at 117. Finally, a defendant's use of another's home to conceal or process drugs has been found to evidence that defendant's dominant or managerial position. *See Lueth,* 807 F.2d at 732; *see also Lewis,* 759 F.2d at 1332.

## C. Marjorie Byers

The evidence of Possick's relationship with Marjorie Byers, wife of acknowledged subordinate Daniel Byers, shows that Ms. Byers assisted Possick in executing his drug transactions. With knowledge of Possick's drug dealings and her husband's participation, Ms. Byers often made flight reservations for Possick and her husband to enable them to make trips to sell drugs or collect payment. Ms. Byers accepted delivery of the airplane tickets and paid for them in cash given to her by Possick. On one occasion, when Mr. Byers was reluctant to travel alone, Possick paid for Ms. Byers and her two children to accompany him on a trip to St. Louis to collect money for Possick. Possick also maintained and paid for a telephone in the Byers's home, again with Ms. Byers's knowledge. In addition, Ms. Byers was aware that cocaine was stored in and dealt out of her home.

■ Persons performing functions similar to a secretary or bookkeeper in the defendant's drug organization have been found to be subordinates within the defendant's supervision. *See Lueth,* 807 F.2d at 732; *Jones,* 801 F.2d at 309; *Lewis,* 759 F.2d at 1332. Although Ms. Byers's purchase of airplane tickets alone is not equivalent to the vaguely secretarial or actuarial functions performed in *Lueth* and *Jones,* she clearly facilitated Possick in carrying out his drug business. Accepting paid travel, *see Maull,* 806 F.2d at 1344, and acquiescing in the use of her home for the storage, preparation, and sale of cocaine also indicate that Ms. Byers was a member of Possick's organization under his management. *See Lueth,* 807 F.2d at 732; *see also Lewis,* 759 F.2d at 1332.

■ The evidence of the involvement of Kalemis, Bell, and Ms. Byers, along with Possick's conceded control over Mr. Byers and Lesmeister, satisfies the statutory requirement of five or more subordinates. We also note that Bell's testimony that Possick gave an unidentified individual an exclusive cocaine distributorship at the Park Avenue lounge tends to establish Possick's supervision of that individual, and the fact that that individual's identity was unknown is irrelevant. *See Tarvers,* 833 F.2d at 1074; *United States v. Markowski,* 772 F.2d 358, 364 (7th Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). In sum, we find there is substantial evidence to support the jury's

verdict that Possick organized, managed, or supervised at least five people in connection with his drug trafficking.

## II. Denial of Severance

Possick's next contention is that the district court erred by denying his motion to sever the CCE charge from the other charges against him. Possick claims that he wished to testify in reference to the CCE charge while invoking his right to remain silent on the others. Anticipating that the jury would look unfavorably on the invocation of the right to remain silent on selected counts, Possick chose not to testify at all. Now Possick alleges that he was prejudiced within the meaning of Fed. R.Crim.P. 14.

Fed.R.Crim.P. 14 provides that "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * * the court may order * * * separate trials of counts * * * or provide whatever other relief justice requires." Denial of a motion for severance will be grounds for reversal only if the denial was an abuse of discretion and resulted in clear prejudice. *See United States v. Bohr,* 581 F.2d 1294, 1300–01 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978); *United States v. Losing,* 560 F.2d 906, 911 (8th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977).

For reversal, Possick relies on *Cross v. United States,* 335 F.2d 987 (D.C.Cir.1964), and quotes it for the proposition that "[p]rejudice may develop when an accused wishes to testify on one but not the other of two joined offenses *which are clearly distinct in time, place and evidence.* * * * [Because] silence on one count would be damaging in the face of [an] express denial of the other." *Id.* at 989 (emphasis added). In *Cross,* the defendant was charged with two counts of robbery, one for his participation in the robbery of a church on February 23, 1962, and one for his involvement in the robbery of a private home on May 2, 1962. The two charged crimes were factually unrelated. In contrast, the CCE charge is entirely interrelated with the other drug charges against

Possick (conspiracy to distribute cocaine, use of a communication facility to commit a conspiracy, interstate travel in aid of racketeering, and distribution of cocaine), and is not distinct in time, place, or evidence.

■ Furthermore, *Cross* is no longer the last word on severance. *See United States v. Corbin,* 734 F.2d 643, 648–49 (11th Cir. 1984); *United States v. Jardan,* 552 F.2d 216, 220 (8th Cir.), *cert. denied,* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). In order to gain a severance, a defendant must make a persuasive and detailed showing regarding the testimony he would give on the one count he wishes severed and the reason he cannot testify on the other counts. *See Corbin,* 734 F.2d at 648–49; *United States v. Lewis,* 547 F.2d 1030, 1034 (8th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). Possick failed to make the requisite showing. In a pretrial motion before the district court, Possick simply claimed he was "not a kingpin [and] did not supervise five or more persons [or] obtain substantial income." Tr. July 8, 1986, p. 3. This is not the type of detailed showing that convinces us that the district court abused its discretion.

Finally, Possick cannot establish prejudice. *See, e.g., United States v. Hutchings,* 751 F.2d 230, 236 (8th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed. 2d 75 (1985); *United States v. Rodgers,* 732 F.2d 625, 630 (8th Cir.1984). " 'Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together.' " *Rodgers,* 732 F.2d at 630 (quoting *United States v. Dennis,* 625 F.2d 782, 802 (8th Cir.1980)). The evidence of Possick's guilt on the other drug charges would be probative and admissible in a separate trial of the CCE count, just as evidence of Possick's relationship with his subordinates and the amount of cocaine involved would be admissible in a separate trial of the other counts. Additionally, because we have found that the government's evidence was

more than sufficient to support a conviction on the CCE count, we find that Possick suffered no clear prejudice. *See United States v. Yates*, 734 F.2d 368, 370 (8th Cir.1984).

### III. Admission of Charts

Possick also alleges that the district court erroneously admitted several charts into evidence and permitted the jury to use them in their deliberations without giving a limiting instruction. The charts in question are three handwritten one-page charts compiled by Bell listing the dates and nature of his various drug transactions, and two charts prepared by DEA agents, one showing the number of telephone calls made between Possick's home and the homes of his subordinates, and a flow chart that purports to show the organization of his group.

■ Possick first claims that the charts are inadmissible because they do not summarize "voluminous" writings as required by Fed.R.Evid. 1006. The telephone chart, based on telephone toll records, shows roughly 250 phone calls, and the Bell charts summarize twenty drug transactions that were memorialized by various hotel receipts and phone bills. Although the quantity of underlying documents is not so large as in, for example, a tax fraud case, Rule 1006 does not require that it be literally impossible to examine all the underlying records, but only that in-court examination would be an inconvenience. *See United States v. Scales*, 594 F.2d 558, 562 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). We find that the district court's admission of the Bell charts and the phone chart was not an abuse of discretion. *See United States v. Nelson*, 735 F.2d 1070, 1072 (8th Cir.1984) (per curiam); *United States v. King*, 616 F.2d 1034, 1041 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980).

■ After examining the record, we find no clear indication of the district court's rationale for admitting the organizational chart, but we note that the use of such charts as demonstrative devices to aid the jury's comprehension is well within the court's discretion. *See* Fed.R.Evid. 611(a); 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1006[07], p. 1006–15 (1983). Possick argues, however, that the district court abused its discretion because the DEA charts were improperly argumentative. Possick's claim that the organizational chart was argumentative because his name was treated prominently is without merit. Although the phone chart may imply that the recorded phone calls were person-to-person rather than simply between residences, *see United States v. Drougas*, 748 F.2d 8, 26 (1st Cir.1984), we do not find that the chart was so unfair and misleading as to require a reversal. On the whole, the charts were straightforward and accurate, and we cannot find that the district court abused its discretion in permitting their use. *See Nelson*, 735 F.2d at 1072; *King*, 616 F.2d at 1041.

■ Possick's last argument with respect to the charts is that they should not have been permitted to go to the jury during their deliberations, particularly without a limiting instruction cautioning the jury that the charts themselves were not evidence but only intended for their convenience. Charts and diagrams admitted under Fed.R.Evid. 1006 may be sent to the jury at the district court's discretion. *See United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987); *United States v. Robinson*, 774 F.2d 261, 275 (8th Cir.1985). When the district court sends this type of exhibit to the jury, however, a limiting instruction is appropriate. *See United States v. Lewis*, 759 F.2d 1316, 1329 n. 6 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *Scales*, 594 F.2d at 564. The submission of purely demonstrative charts to the jury is disfavored, *see United States v. Gardner*, 611 F.2d 770, 776 n. 3 (9th Cir.1980); *Weinstein's Evidence* at ¶ 1006[07], p. 1006–16, and therefore limiting instructions are more strongly suggested.

■ In response to an objection by Possick, the district court stated that it would

give the jury an appropriate limiting instruction on the use of the charts. There is no indication in the record why this instruction was not given. However, we do not find that this error, if it is error, requires reversal. In light of the strength of the evidence against Possick and the amount of other evidence offered during the seven-day trial, coupled with the opportunity Possick's counsel had during closing argument and cross-examination to comment on and minimize the charts' effectiveness, we cannot find that the use of the charts deprived Possick of a substantially fair trial. *See King*, 616 F.2d at 1041.

### IV. Prosecutorial Misconduct

■■ During his closing arguments, the prosecutor made several statements that Possick charges constitute reversible misconduct. Possick objected promptly at trial, and the district court denied his motion for a mistrial. Three times during his argument the prosecutor stated either that he was confident that the government had met its burden of proof or that he did not agree with the defense counsel's characterization of a witness's testimony. Such comments on what the evidence at trial has shown, without implying any outside knowledge, are entirely permissible. *United States v. Segal*, 649 F.2d 599, 604 (8th Cir.1981); *United States v. Wolf*, 645 F.2d 665, 668 (8th Cir.1981).

■■ Possick also alleges that the prosecutor attempted to inflame the passions of the jury by asking them to "[h]old [Possick] accountable for the cocaine he has distributed to kids." Despite Possick's assertions to the contrary, the evidence established that Possick had distributed cocaine, directly and indirectly, to users under the age of twenty. Although the prosecutor's statement could be expected to stimulate a strong response, it was not a focal point of the argument, and it was neither misleading nor unfair. In order to establish prosecutorial misconduct, Possick must show that the comments were both improper and so prejudicial as to have denied him a fair trial. *United States v. Janis*, 831 F.2d 773, 778 (8th Cir.1987); *United States v. Her-*

*nandez*, 779 F.2d 456, 458 (8th Cir.1985). Possick has shown no impropriety. The denial of a motion for a mistrial is reviewable only for abuse of discretion. *United States v. Powell*, 771 F.2d 1173, 1175 (8th Cir.1985). We conclude that the district court did not abuse its discretion in denying the motion for a mistrial.

### V. Forfeiture

The jury returned a special verdict finding that Possick's Palm Springs, Florida, home was subject to forfeiture under the mandatory forfeiture provisions of 21 U.S.C. §§ 848(a)(2), 853(a)(1) and (2). Possick then moved pursuant to Fed.R.Crim.P. 29(c) for a motion of acquittal, claiming that the indictment and the special verdict form did not comply with Fed.R.Crim.P. 7(c)(2) and 31(e). The district court issued a memorandum and order on March 27, 1987, denying the motion.

The forfeiture count of the indictment sought forfeiture of "a home" located at a particular address on a particular parcel of land as recorded in the public records of the county where it sat. The special verdict form used identical language. Possick claims to own the specified property jointly with his wife. He argues that because the indictment and special verdict form did not specify his interest in the property or the extent to which he purchased the property with drug profits, they are too ambiguous to satisfy Fed.R.Crim.P. 7(c)(2) and 31(e).

Fed.R.Crim.P. 7(c)(2) states that "[n]o judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture." Rule 31(e) provides that the jury must return a special verdict specifying "the extent of the interest or property subject to forfeiture, if any." The district court, noting that only one defendant and one piece of property was involved, found that the indictment was clear.

■■We agree. The language of the indictment is clear and put Possick on notice that his entire home was subject to forfeiture. *See United States v. Cauble*, 706 F.2d 1322, 1347 (5th Cir.1983) ("[b]arebones pleading" suffices so long as defend-

ant put on notice that government seeks forfeiture of a particular property), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). Since the government sought forfeiture under § 853(a)(2), which seeks the forfeiture of any property used to commit or facilitate a violation, as well as (a)(1), which seeks forfeiture of any property constituting the proceeds from a violation, it was readily apparent that the entire property was subject to forfeiture. If Possick's wife wished to assert an interest in the property, her rights were protected under 21 U.S.C. § 853(n)(1)–(6), and she could have petitioned the district court for a hearing to adjudicate that interest. 21 U.S.C. § 853(n)(2).

### VI. Conspiracy Conviction

Conspiracy is a lesser included offense in a CCE. *See United States v. Maull,* 806 F.2d 1340, 1347 (8th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987); *United States v. Samuelson,* 697 F.2d 255, 259–60 (8th Cir. 1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1314, 79 L.Ed.2d 711 (1984). Accordingly, we remand so that the district court may vacate the conspiracy conviction. In all other respects, the judgment of conviction is affirmed.