**The UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth LINN, Defendant–Appellant.**

**No. 88–3311.**

United States Court of Appeals, Fifth Circuit.

Nov. 27, 1989.

Rehearing and Rehearing En Banc Denied Dec. 28, 1989.

---

Robert Glass, New Orleans, La., for defendant-appellant.

Bill McSherry, Robert J. Boitmann, Asst. U.S. Attys. and John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

A Louisiana jury found appellant Kenneth Linn guilty of operating a continuing criminal enterprise. Linn timely appealed the conviction to this Court. For the reasons stated herein, we affirm.

## I. BACKGROUND

Linn was charged in an eighteen count indictment with various controlled substances violations. The jury convicted Linn on all counts. On this appeal, we are concerned with Count One, which charged Linn with operating a continuing criminal enterprise (hereinafter CCE) in violation of 21 U.S.C. § 848.[1] Count I reads in relevant part:

> From on or about January 1, 1979, and continuously thereafter until on or about July 1, 1981, in the Eastern District of Louisiana and elsewhere, KENNETH H. LINN, a/k/a Kenneth Falino, a/k/a Robert Falino, a/k/a James Davis, a/k/a David Snow, defendant herein, knowingly and willfully did engage in a continu-

---

**1.** The Continuing Criminal Enterprise statute, 21 U.S.C. § 848(c), provides in pertinent part:

For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

ing criminal enterprise, in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846, which violations were part of a continuing series of violations of said statutes undertaken by the said defendant, involving more than ten (10) kilograms of cocaine hydrochloride and in concert with at least five (5) other persons, with respect to whom the defendant occupied a position of organizer, supervisor and manager, and from which continuing series of violations the defendant obtained substantial income and resources to which the United States of America is entitled to forfeit including all profits obtained by the defendant, KENNETH H. LINN, in such enterprise, and any of his interest in the enterprise or the referenced corporations, and property and contractual rights of any kind affording a source of influence over such enterprises.

During the time period charged in the indictment, Linn operated a drug trafficking business, reselling cocaine that he had purchased from larger scale dealers. Linn's operation relied on regular suppliers and regular customers, as well as individuals who aided in the concealment of his activities and in laundering the proceeds. The cocaine was supplied from three independent sources. The primary source was a Cuban identified only as "Chico," who resided in the Miami area. The other two sources were Leo Radosta, who was himself convicted of operating a CCE, and Justin Durbin.

Linn took delivery of the cocaine supply at a house located at 7390 S.W. 104th Street in Miami. If Linn was displeased with the quality of the merchandise or if he did not need the entire supply, Linn would return the proffered merchandise to the supplier. Linn set his own prices and made the decision as to which of the buyers would be fronted the cocaine and which would be required to pay up front. The distribution of the cocaine was organized from the house at 7390 S.W. 104th Street. Occasionally, the cocaine would be sent to the buyer via airport to airport express mail. The buyers included William Burns, Robert Collins, Mike Rouperich, Michael Colvin, Nick Popich and Justin Durbin.

Linn was assisted in his distribution scheme by Flo Burke and Charles Brazel. Burke was Linn's girlfriend and companion for much of the period of time covered by the indictment. Additionally, she served as his messenger, often picking up packages of money sent by a buyer. Brazel acted as a go-between. Specifically, he arranged for Linn to ship packages of cocaine to a post office box for buyer Colvin, and made the arrangements for Colvin to pay Linn. If Colvin failed to pay according to the plan, the job of putting pressure on Colvin fell on Brazel's shoulders.

Linn, sometimes through the alias Robert Falino, utilized two corporations in his business, Middle Eastern Ventures and International Marketing & Development. Middle Eastern Ventures owned the home on 104th Street from which the cocaine was distributed. Both corporations held post office boxes where proceeds from sales were sent, and both held safety deposit boxes used to store cash and cocaine.

Linn engaged the services of two attorneys, Frank Diaz and Robert Dane Smith, as well as a money launderer, Rudolph Keys,[2] to assist in protecting his money. Keys' services were utilized to bring $320,000 in cash out of the United States and into the Turkes & Caicos Islands. The money eventually traveled back to the United States where it was used to purchase a residence in Fairfax County, California. Keys testified that Smith instructed him on how to use the money. Smith's name also appeared alongside Linn's alias, Robert Falino, on safety deposit box documents relating to a box used to store cocaine and proceeds from the sale of cocaine. Attorney Diaz, who had an interest in the Hemisphere National Bank in Miami, agreed to allow Linn to deposit large sums of money into an account at that bank without filing notification forms with the Internal Revenue Service, thus assisting Linn in concealing his assets from the Government. Diaz also held a power of

2. Keys, a citizen of the Bahamas, operated a bank on the Caicos Islands in the Caribbean.

attorney that allowed Linn to set up and gain access to a post office box for receipt of cocaine payments.

Linn was indicted on multiple counts of controlled substances violations. Prior to trial, Linn moved for a bill of particulars specifying the individuals he was alleged to have supervised, organized or managed. The Government compiled, and supplied a lengthy list of names.[3] The names of attorneys Diaz and Smith were not included in the bill of particulars. During trial, the Government introduced evidence concerning the activities of Diaz and Smith. Such evidence was clearly admissible as proof of the conspiracy count. Linn did not object to the admission of the evidence, nor did he request a limiting instruction. At the conclusion of the Government's case-in-chief, Linn moved for a judgment of acquittal on the CCE count on the grounds that the Government had failed to prove that Linn supervised, managed or organized five or more people. The court denied the motion.

Prior to closing argument, Linn filed three in limine motions. First, Linn requested that the Government be instructed not to argue that any of the individuals named in the bill of particulars, except for two, were organized, supervised or managed by Linn. The court partially granted this motion by limiting the Government's argument to only ten of the persons identified in the bill of particulars. Second, Linn requested that the court direct the Government not to argue that Diaz and Smith were organized, managed or supervised by Linn. Third, Linn requested that the court direct the Government to mention in its opening summation all of those persons which it contended that Linn organized, managed or supervised. The court granted the second and third motions. However, the court denied Linn's post argument request for an instruction limiting the jury's consideration as to the CCE offense to the ten identified individuals. The court also denied Linn's request for a special interrogatory requiring the jury to name the persons which they concluded were organized, managed or supervised by Linn.

The jury returned a guilty verdict on all counts. Linn's postjudgment motion for acquittal based on the sufficiency of the evidence to support the CCE claim was denied.

## II. DISCUSSION

### A. *Variance*

Linn argues that the district court erred in refusing the requested defense instruction which would have specified those persons who could be considered among the five or more which Linn supervised, managed or organized. By not prohibiting the jury's consideration of Diaz and Smith as supervisees, Linn asserts, the court created a prejudicial variance from the bill of particulars.

Linn's reliance on *United States v. Grissom*, 645 F.2d 461 (5th Cir.1981), for the proposition that the district court's failure to deliver Linn's requested instruction constituted reversible error is not persuasive. *Grissom* instructs that a trial court's refusal to give a requested instruction constitutes reversible error only if the

---

3. The Government's bill of particulars specified the following persons:

Joan Andre
Charles Brazel
Flo Burke
William Burns
Robert Lee Collins
Michael Colvin
Justin Derbin (sic)
Ann Desbon
Gail Lawing
Rudy Keys
Vincent Marcello
Ronnie Martin
Averil Missich

Nick Popich
Mike Ruperich (sic)
Marsha Smith
Gary Young
Several unidentified persons of Latin persuasion
Hawaiian Michael
Tomato
Cuban Joey
Chico
Unidentified persons receiving shipments of narcotics from Linn through airport to airport mail service
Lynn Gelles
Leo Radosta.

instruction is substantially correct, was not substantially covered in the actual charge, and concerns an important point in the trial such that the failure to give it seriously impaired the defendant's ability to effectively present a given defense. The purpose of a bill of particulars is to aid the defendant in the preparation of his defense. It does not create in the defendant an entitlement of an instruction reflecting the contents of the bill of particulars.

■ Linn's argument that the failure of the district court to give his requested instruction impaired his ability to present an effective defense stems from what Linn perceives as a prejudicial variance between the bill of particulars and the Government's proof and argument at trial.[4] We conclude that any variance was not prejudicial to Linn's preparation of his defense, and that the failure of the district court to give the requested instruction, if indeed error, was harmless error.

In the instant case, the indictment's CCE count tracked the language of the statute. The bill of particulars amplified the indictment and served the purpose of informing Linn of the predicate for his alleged offense. The device of a bill of particulars ensures that a defendant can prepare an adequate defense and "minimize[s] the danger of surprise at trial." *United States v. Johnson*, 575 F.2d 1347, 1356 (5th Cir. 1978), *cert. denied sub nom. Harelson v. United States*, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979). "[W]here a fatal variance is argued, appellant must demonstrate that he was taken by surprise by reason of the variance and that such surprise prejudiced the preparation of his defense." *United States v. Horton*, 526 F.2d 884, 887 (5th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). Al-

though Linn argues to this Court that he was surprised by the alleged variance, we are dubious of such an assertion. The evidence of Smith and Diaz's involvement was admitted for all purposes during the Government's case-in-chief. No mention of a variance or request for a limiting instruction was made by Linn.

It is not necessary, however, for this Court to peer into Linn's psyche on a quest to determine whether the element of surprise does exist because of our conclusion that Linn has not demonstrated prejudice. The trial judge granted Linn's Motion in Limine preventing the Government from arguing that Diaz and Smith could be included in the five persons Linn supervised, managed or organized. Linn, himself, in closing argument, itemized the persons who could be considered within the five needed for a CCE conviction on a chart. The Government, in fact, referred to that very chart in summation arguing that there were at least five on that chart for the jury to rely upon. The Government even offered five names to the jury for consideration. The five mentioned did not include Diaz or Smith. Finally, there is sufficient evidence on which to base a finding that Linn did, in fact, supervise, manage, or organize those five. *See, infra.*

Based on the foregoing, we conclude that Linn has not demonstrated a fatal variance.

## B. *Sufficiency of the Evidence*

Linn also argues that the evidence was insufficient to support a finding that Linn supervised, managed or organized five persons. Linn raised this argument in his motion for postverdict judgment of acquittal. The district court, in ruling on that

4. For the purposes of this appeal, because we conclude that the variance, if any, was not prejudicial, we assume without deciding that Linn objected to the perceived variance sufficiently to preserve the issue for appeal. However, in making this assumption, we also point out that Linn failed, during the course of the Government's case-in-chief, to request an instruction limiting the jury's consideration of the evidence of Smith and Diaz's involvement to the conspir-

acy count, nor did Linn ever specifically object to a prejudicial variance. There is a general proposition that an objection of variance must be made when the evidence is offered, and the reason of the variance pointed out in order to allow the court to consider an amendment to the bill of particulars, as well as to preserve the error for appeal. *See, e.g., Columbia Manufacturing Co. v. Hastings*, 121 F. 328 (7th Cir.1902).

motion, itemized five persons for whom there was sufficient evidence to convict Linn of the CCE count.[5] We have reviewed the record on appeal, and agree with the district court's assessment of the evidence and the reasoning set forth in its ruling on Linn's motion for a postverdict judgment of acquittal.

### C. *Unanimity Instruction*

 We find no merit to Linn's argument that the district court erred in refusing to instruct the jury that they had to unanimously agree on the identity of each of the five individuals which satisfy the five-person element of the CCE statute. Linn relies on *United States v. Echeverri*, 854 F.2d 638 (3d Cir.1988). In *Echeverri*, the Third Circuit required that the jury be instructed to unanimously agree on which three criminal acts constituted the continuing series of narcotics violations. By analogy, Linn argues that we should require unanimity in regard to the five-person element.

We do not agree. Rather, we adopt the reasoning of the Seventh and First Circuits which have held that the CCE statute does not require the jury to agree unanimously on the identities of the five individuals. *United States v. Markowski*, 772 F.2d 358 (7th Cir.1985), *cert denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986); *United States v. Tarvers*, 833 F.2d 1068 (1st Cir.1987). We agree with the rationale stated in *Markowski* and largely followed in *Tarvers*, to the effect that the statute does not make the identity of the five subordinates important since "[t]he CCE statute is directed against all enterprises of a certain size." 772 F.2d at 364. So long as the jurors unanimously agree that the defendant supervised, organized, or managed any five persons, this element of a CCE violation is satisfied. Consequently, in the instant case, the district court's general instruction on unanimity was sufficient; the court did not err by refusing to give the requested instruction.

### III. CONCLUSION

For the reasons stated above, we affirm Linn's conviction on the CCE count.

AFFIRMED.

---

**5.** These included Burke, Brazel, Burns, Colvin and Keys.