REVISED - AUGUST 12, 1999

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-30495
_____

UNITED STATES,

Plaintiff-Appellee,

VERSUS

MICHAEL SHORT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

July 15, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Michael Short appeals his conviction on a number of counts arising out of his leadership of a drug-distribution ring. For the reasons that follow, we vacate Short's conviction on Count 1 and affirm the remaining counts of his conviction.

I.

Michael Short was the leader of a substantial drug-dealing organization named after its principal distribution point in New Orleans, the intersection of Phillip Street and Clara Street. Numerous witnesses testified about Short's management of the Phillip and Clara drug ring in 1995 and 1996. For example, Lloyd Locke testified that he sold heroin for Short; Gregory Cooks testified that he sold heroin for Short and acted as Short's

enforcer.

Law enforcement officers also testified as to Short's involvement in the drug trade. For example, Officer Tim Bayard of the New Orleans Police Department testified that on September 15, 1995, he observed Short leaving 4507 S. Prieur Street carrying a bag. When Short noticed Bayard, he threw the bag away. The police retrieved the bag and found that it contained $15,000 cash. The police seized the money after drug dogs alerted to the presence of illegal substances on it. Officer Jake Schnapp testified that on May 14, 1995, he and his partner observed Short give a brown paper bag to Cooks. When Cooks saw the police, he threw the bag to the ground. The police detained both men. While they did so, Yvonne Cooks picked up the bag and began walking into a house at 903 Fourth Street. The police apprehended Ms. Cooks and searched the bag. The bag contained $5,000 cash. Morever, a search of the 903 Fourth Street residence found five clear plastic bags of off-white powder (later determined to be heroin) and a loaded pistol. The prosecution also presented numerous recordings of phone conversations between Short and others directly implicating Short in the drug trade.

For the purposes of this appeal, two additional events are important: the search of the car driven by Lerman Robinson and the murder of Derrick Hubbard.

On June 25, 1996, Lerman Robinson was driving his mother-in-law's Pontiac. Short, who had been riding in a Jeep Cherokee with Cooks and John Bryant, waved Robinson down. Robinson stopped the Pontiac in an intersection so that Short could enter the car.

Officer Raymond Veit of the New Orleans Police Department saw Robinson's Pontiac blocking the intersection and pulled the car over. Officer Veit asked the occupants to step out of the car and conducted routine pat downs. He felt a large bulge in Short's pocket, which turned out to be $891 cash. Veit had previously arrested Short on a narcotics-related offense, so he called a canine officer to determine whether the money contained traces of narcotics. The drug dog alerted to the money. Office William Kingman, an ATF agent assigned to a local drug task force, assisted Veit. When Kingman looked inside the Pontiac, he saw three cellular phones. He picked up the phones, removed their backs, and followed the instructions on how to retrieve the number assigned to the phones. One of the numbers Kingman obtained was (404) 694-7126, which he passed on to a DEA agent. The drug task force later obtained a warrant to tap this phone. This wire tap was the source of much of the evidence that led to Short's conviction.

The second important event was the murder of Derrick Hubbard, who was acting as an informant for the DEA. The Government presented evidence that Hubbard had been a drug dealer and an enforcer for Short's organization. Short and Hubbard had a falling out because Hubbard had been stealing drugs and money from Short. On the day that Hubbard was murdered, Short threatened to kill Hubbard after seeing him at the Phillip and Clara intersection. After making this threat, Short had a conversation with Troyel Ross and Kevin Brown. Ross then shot and killed Hubbard in front of a number of eyewitnesses. Ross left the scene with Cooks. Cooks went to a pay phone at the corner of Phillip and Clara. Short

3

called Cooks at that pay phone and exclaimed, "We got that bitch. That bitch dead. We got that bitch." A little while later, Short gave Ross $2,500, stating, "This is a little something for handling that."

Short and a number of coconspirators were charged in a multicount indictment. Short was charged in ten counts.[1] He was found guilty on all counts. The district court imposed four concurrent life sentences on Counts 1-4, plus a mandatory additional five-year prison sentence on Count 5, the firearm offense. The district court imposed additional prison terms on the remaining counts, but these terms all run concurrently with the life sentences. Short now appeals.

## II.

Short argues eleven points of error on appeal. We address these points in turn.

## A.

Short argues first that Agent Kingman violated rights secured by the Fourth Amendment when the agent obtained the telephone

---

[1] Count 1 for conspiring to distribute heroin and cocaine in violation of 21 U.S.C. § 846; Count 2 for leading, organizing, and managing a continuing criminal enterprise involving a conspiracy to distribute heroin in violation of 21 U.S.C. § 848; Count 3 for intentionally killing Derrick Hubbard in furtherance of a continuing criminal enterprise in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; Count 4 for causing the killing of Hubbard through the use of a firearm in violation of 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 2; Count 5 for carrying a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); Counts 6 and 8 for using a telephone in furtherance of a drug conspiracy in violation of 21 U.S.C. § 843(b); Count 7 for using the Postal Service in furtherance of a drug conspiracy in violation of 21 U.S.C. § 843(b); Count 24 for using a modified cellular phone with the intent to defraud in violation of 18 U.S.C. § 1029(a)(5); and Count 27 for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956.

numbers assigned to the cellular phones found in the Pontiac being driven by Lerman Robinson.  Short argues that because this search was improper, the wire tap of one of the phone numbers discovered in that search was illegal and therefore all the fruits of that wire tap should have been suppressed.

Preliminarily, however, we address the Government's contention that Short does not have standing to assert this argument.  Under the precedent of the Supreme Court and this Court, a passenger in an automobile generally lacks standing to challenge a search of that automobile, especially when there is no indication that the items being searched belong to the passenger.  See Rakas v. Illinois, 439 U.S. 128, 132-45, 99 S. Ct. 421, 424-30, 58 L. Ed. 2d 387 (1978); United States v. Roberson, 6 F.3d 1088, 1091 (5th Cir. 1993); United States v. Mendoza-Burciaga, 981 F.2d 192, 196 (5th Cir. 1992).  Short points to no evidence from the search or any legal theory that supports an argument that this general rule does not apply to the search of Robinson's Pontiac and the cellular phones found in that vehicle.  Short did not have the phones on his person, nor were the phones in a location that indicated that the phones were his, nor did he indicate to the police that the phones were his.  Under the cases cited above, Short does not have standing to challenge the search of Robinson's Pontiac or the cellular phones found in the vehicle.  We therefore reject his Fourth Amendment challenge.

B.

Short next argues that the district court erred by refusing to instruct the jury that, in order to find Short guilty of being an

5

organizer, supervisor, or manager of the continuing criminal enterprise, the jurors must agree unanimously as to the identities of at least five of the people being organized, supervised, or managed.

This Court previously rejected this exact argument in <u>United States v. Linn</u>, 889 F.2d 1369, 1374 (5th Cir. 1989). The Supreme Court, however, recently held that a jury must agree unanimously on the three criminal acts forming a series of criminal acts for the purposes of the continuing criminal enterprise statute. <u>Richardson v. United States</u>, 119 S. Ct. 1707, 1712-13 (1999). This holding raises the question of whether this Circuit's precedent that does not require jury unanimity as to the identities of supervisees still stands. In <u>Richardson</u>, the Supreme Court gave us guidance on this issue. Although the Court did not decide whether unanimity is required as to supervisees, the Court distinguished the "supervisor" provision from the "series" provision it found to require unanimity. The Court stated: "Assuming without deciding, that there is no unanimity requirement [as to supervisees], we [] find [that provision] significantly different from the provision before us. They differ in respect to language, breadth, tradition, and the other factors we have discussed." <u>Id.</u> at 1713. Thus, although the Supreme Court in <u>Richardson</u> did not decide the issue, it gave no indication that a jury finding of unanimity as to supervisees is required. In other words, <u>Richardson</u> did not suggest that our precedent is no longer valid. Indeed, the <u>Richardson</u> opinion implied just the opposite. Because this panel is bound by the precedent of previous panels absent an intervening

6

Supreme Court case explicitly or implicitly overruling that prior precedent, we are bound by our decision in <u>Linn</u>. For that reason, we reject Short's contention that the district court erred by refusing his proposed jury instruction requiring unanimity as to the identities of the five people being organized, supervised, or managed.

C.

Short next argues that his counsel made improper statements during closing argument and therefore the district court should have granted him a new trial.

During closing argument, Short's counsel stated,

> If you listen to the tapes, if you hear between the lines and read between the lines of the several people who testified out there, you know that bunches of people were selling drugs and they were distributing drugs to numbers of people. Michael Short[] was involved; you've heard that evidence; it can't be denied. But the idea that he was a kingpin relies on the testimony of these men. There was money to be made; they made money. There was money that was earned illegally through the drug trade, but that doesn't make a continuing criminal enterprise.
>
> . . .
>
> Ladies and gentlemen of the jury, the bottom level of this case is the conspiracy charge. And that is, for me, the most difficult thing to argue because the evidence is so strong; . . . but they were basically independent operators who, from time to time, came in contact with and worked with some other people. They were basically independent people.

At the end of this closing argument, Short told the district court that he did not agree with the statements of his counsel, which he felt were tantamount to an admission of guilt. After he was convicted, Short requested a new trial on the ground that his counsel had effectively entered a guilty plea for him.

The district court characterized Short's claim as one of

7

ineffective assistance of counsel. The court then ruled that counsel's argument fell "within the ambit of trial strategy and tactics." In light of the overwhelming evidence of Short's involvement in the drug trade, the district court found that counsel's trial strategy was reasonable and therefore it was not ineffective assistance under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

We concur with the district court's analysis. While counsel did not explicitly admit Short's guilt on any of the particular counts with which Short was charged, counsel clearly implicated Short in the drug trade. However, we agree with the district court that this closing argument does not amount to ineffective assistance of counsel. The evidence from coconspirators, law enforcement officers, and recorded telephone conversations was overwhelming that Short was involved in the drug trade. Thus, counsel took the reasonable strategic approach of trying to establish his credibility with the jury and enhance his chances that the jury would accept his arguments on the more serious counts, such as the kingpin element of the continuing criminal enterprise and the murder of Derrick Hubbard. We agree with the district court that counsel's use of such a tactic does not mandate that we grant Short a new trial.

### D.

Short argues that his conviction and sentence on both Count 1 (conspiracy) and Count 2 (continuing criminal enterprise) violate the Double Jeopardy Clause of the Constitution because Count 1 is a lesser included offense of Count 2. See United States v. Brito,

8

136 F.3d 397, 408 (5th Cir. 1998). The Government agrees and concedes that if we affirm Count 2, then we should vacate Count 1. Therefore, because we do affirm Count 2, we vacate Count 1.

E.

Short next contends that the evidence is insufficient to support his conviction on Counts 3 and 4. He also argues that his conviction on Counts 3 and 4 must be overturned because the jury reached inconsistent verdicts.

Count 3 of the amended indictment alleged that Short and Troyel Ross intentionally killed Derrick Hubbard in furtherance of a continuing criminal enterprise. Count 4 alleged that Short procured and caused the killing of Derrick Hubbard through the use of a firearm and that Ross performed the actual killing. The jury convicted Short on both Counts 3 and 4. The record evidence discussed above amply supports these verdicts.

While the jury convicted Short on Counts 3 and 4, it was unable to reach a verdict as to Ross. Short contends that because the jury was not convinced beyond a reasonable doubt that Ross killed Hubbard, it could not have been convinced beyond a reasonable doubt that Short caused Ross to kill Hubbard. Short contends that to permit such inconsistent verdicts would violate his right to due process of law under the Fifth Amendment.

This argument is meritless. First, it is not clear to us that the verdicts are necessarily inconsistent. Second, inconsistent verdicts do not require reversal of the guilty verdicts, so long as there is sufficient evidence to support the jury's determination of guilt. See, e.g., United States v. Sylvester, 143 F.3d 923, 930

9

(5th Cir. 1998) (inconsistent verdicts not a bar to conviction even when all coconspirators are acquitted); <u>United States v. Scurlock</u>, 52 F.3d 531, 537 (5th Cir. 1995) (jury can render inconsistent verdicts, even when inconsistency is result of mistake or compromise); <u>United States v. Merida</u>, 765 F.2d 1205, 1220 (5th Cir. 1985) ("Juries are free to return inconsistent verdicts, for whatever reason, provided their convictions are supported by adequate evidence."). In this case, ample evidence supports Short's conviction on Counts 3 and 4. Therefore, the jury's failure to convict Ross on Counts 3 and 4 does not provide any reason to vacate Short's conviction on the same counts.

F.

Short also argues that the evidence is insufficient to support his conviction on Counts 2, 5, and 27. We disagree.

In Count 2, Short was convicted of organizing, supervising, or managing a continuing criminal enterprise to possess and distribute heroin. Short contends that the Government failed to provide sufficient proof that Short supervised five or more members of the criminal enterprise, as required by 21 U.S.C. § 848. In response, the Government argues that it presented evidence sufficient for the jury to find that Short supervised or managed at least nine members of the Phillip and Clara drug ring. After reviewing the record, we agree with the Government that the evidence was clearly sufficient for the jury to conclude that Short organized, supervised, or managed at least five members of the criminal enterprise.

In Count 5, Short was convicted of carrying a gun during the commission of a drug trafficking crime in violation of 18 U.S.C. §

10

924(c)(1). Short contends that the Government did not prove that Short carried a gun during or in relation to a drug crime, as required by Section 924(c)(1). Short, however, ignores the evidence that he directed his underlings to carry guns.

The record is replete with references to firearms being used by the Phillip and Clara organization, usually at Short's behest. For example, Lloyd Locke testified to a number of times when Short told him to "get strapped"--get a firearm--and accompany him on a drug-related errand. The Government also presented wire tap recordings in which Short ordered Locke and Kevin Brown to arm themselves and handle various problems for the organization. This evidence is clearly sufficient to support Short's conviction on Count 5. See 18 U.S.C. § 2 ("Whoever commits an offense . . . or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

Next, Short challenges the sufficiency of the evidence supporting his conviction on Count 27 for money laundering. In support of this count, the Government presented evidence that Short had given his wife, Kim Short, $25,000 in cash and instructed her to place the money in a safety deposit box under the name of one of her relatives. Based on this evidence, the Government charged Short with money laundering under two provisions of a federal money laundering statute: 18 U.S.C. § 1956(a)(1)(A)(i), which prohibits financial transactions "with the intent to promote the carrying on of specified, unlawful activity," and 18 U.S.C. § 1956(a)(1)(B)(i), which prohibits financial transactions designed "to conceal or disguise the nature, the location, the source, the ownership, or

11

the control of the proceeds of specified, unlawful activity." The district court instructed the jury that it could find Short guilty if it found that his actions satisfied the elements of either the "intent to promote" provision or the "conceal and disguise" provision. After reviewing the record, we conclude that the evidence is sufficient to support conviction under the "conceal or disguise" provision. The Government provided evidence sufficient for the jury to infer that the $25,000 cash was profit from drug dealing that Short was attempting to conceal or disguise by having his wife place the money in a safety deposit box under the name of one of her relatives. This inference satisfies all elements of the crime and is therefore sufficient to uphold the money laundering conviction. We therefore reject Short's sufficiency argument on Count 27.

### G.

Short's remaining arguments are as follows: his conviction must be set aside because the Government offered leniency to the coconspirators who testified against him; the district court erred by denying his Motion to List the Individuals the Government Will Allege Were Organized, Supervised, or Managed by Defendant Short in a Continuing Criminal Enterprise; and the district court erred by denying his Motion for a New Trial based on newly discovered evidence. We have considered these arguments and conclude that they are without merit.

### CONCLUSION

We agree with Short and the Government that Count 1 should be vacated. With that one exception, the judgment of the district

12

court is affirmed.  Although we vacate Count 1, because Short's sentences on Counts 1, 2, 3, and 4 are to be served concurrently, it is unnecessary for the district court to resentence Short.

AFFIRMED in part, VACATED in part.