# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 00-31012

---

BRANDON HAYNES,

Petitioner-Appellee,

versus

BURL CAIN, Warden, Louisiana
State Penitentiary,

Respondent-Appellant.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

November  27, 2001

Before POLITZ and EMILIO M. GARZA, Circuit Judges, and KAZEN,* Chief District
Judge.

POLITZ, Circuit Judge:

   Burl Cain, as warden of the Louisiana State Penitentiary appeals the district

court's grant of a writ of habeas corpus to Brandon Haynes.  For the reasons assigned

---

   *Chief District Judge of the Southern District of Texas, sitting by designation.

we affirm.

## BACKGROUND

Haynes was convicted of first degree murder for causing the death of a graduate medical student in 1993. The evidence adduced at trial disclosed that the victim had been last seen late at night working in a research laboratory. The next morning her body was found at the foot of an adjacent 10 story biomedical research building, then under construction. The medical examiner ruled that she died from injuries resulting from the fall. The autopsy disclosed that in addition to the death-dealing injuries the victim had several non-fatal cuts which the medical examiner believed were likely intended to cause torture or compliance, some bruising around her arm, and semen residue in her vagina and rectum.

The evidence pointing to Haynes' involvement in the abduction and death of the student was substantial. Haynes was part of the construction crew working on the biomedical research building. Although he had gone home after completing his shift, eyewitness testimony established that he had returned to the building later that evening. Video surveillance cameras in the biomedical research building recorded him on the upper floors of the building and taped him climbing up to unplug the cameras. DNA analysis established that it was his semen found in the victim. The victim's wallet was found secreted in a wall in his home. A knife that could have caused the cuts on the

2

victim was found in his car, as were blood stains matching the victim. Similar blood stains were found on his pants.

The State brought first degree murder charges against Haynes, contending that he abducted, raped, robbed, and tortured the victim before he either threw her or forced her off the roof. Haynes pleaded not guilty and consistently maintained his innocence.[1]

Haynes was assigned two experienced public defenders. In their judgment the evidence against Haynes would result in his conviction. They decided that the best trial strategy would be to acknowledge that Haynes did abduct, rob, rape and torture the deceased student, but that the State could not prove that he caused or otherwise intended for her to fall from the building. Absent that element Haynes could only be found guilty of second degree felony murder and could not be given a death sentence.

In their opening statement counsel for Haynes stated:

> The evidence will show that the victim, Fang Yang, died during the commission of a felony. It will not show that Brandon Haynes specifically intended to kill her. It will not show that he even caused her death. In essence, the evidence will show that Brandon Haynes is guilty of second degree murder. Nothing more. We are not going to say anything less, just that, second degree murder.
>
> We are not going to contest that Brandon Haynes raped the victim. It was a terrible thing he did, but he did it. We are not going to contest

---

[1] Haynes did not deny that he was with the victim that evening or that they had sexual relations. Rather, he denies that the events transpired in the manner described by the prosecution.

that.  Likewise we are not going to contest the fact that he abducted her first and brought her up to the roof.  We are not contesting that.  We are not going to contest the fact that at some point he possibly robbed her.

Counsel then told the jury that the only issue in the case was whether Haynes intended to cause the woman's death, and that absent such proof  they could not convict him of first degree murder.  Counsel concluded by saying "[The evidence] is enough for second degree murder and that's what we are going to ask you to do at the end of the trial, come back with a verdict of second degree murder, no more, no less."

At the conclusion of defense counsel's opening statement Haynes told the trial judge that he wanted to address the court.  The judge sent the jurors out, and Haynes' counsel stated that anything Haynes said was against the advice of counsel.  Haynes then declared:

> I don't agree with what these lawyers are doing, talking about I'm guilty of second degree murder.  I'm not guilty of second degree or first degree.  If that is the way they are going to represent me, they need to just jump over there with the D.A.'s.  They ain't representing me.  Telling jurors that I'm guilty of second degree murder ain't trying to represent me in no kind of way.  I disagree with what they are doing.

Haynes' counsel responded that in their judgment the evidence precluded hope of a not-guilty verdict and that this approach was in his best interest.  Haynes told the judge that he had previously complained of their trial strategy and had requested that they not represent him.  He repeated that request.  He also stated "I specifically asked

4

my lawyers not to do what they – they said they were going to do this second degree junk. I don't like that. I mean, I'm not guilty. I don't feel I'm guilty of second degree or first degree and I don't agree with them."

The trial judge stated that Haynes was being represented by excellent lawyers and his request for different lawyers was denied. When Haynes protested that he was "stuck" with the appointed counsel and with their trial strategy, the judge stated that Haynes could testify at the appointed time if he desired to. He thereupon brought the jury back in and resumed the trial.

Haynes did not testify, and in closing argument Haynes' counsel returned to the strategy established in the opening statement, saying:

> In our opening, I said pay close attention not only to what all the evidence is going to show. I said there would be only one issue and only one issue; that is, intent to kill. Look at all the evidence. . . . It proves a lot of things. It proves a lot of things we didn't contest. It proves he intentionally raped her. It proves he intentionally cut her. Did I say otherwise? I conceded that. It proves that he abducted and possibly robbed her. He did take the wallet; we don't know when. We did not contest that. We did not cross examine any witness regarding the source of semen. The only issue we are contesting is whether or not Mr. Haynes intentionally killed the victim, Fang Yang. That is it. It is the only issue.

The jury found Haynes guilty of first degree murder but could not agree on the punishment, and under Louisiana law the trial judge sentenced Haynes to life without possibility of parole. Haynes filed a *pro se* brief in his direct appeal contending that

5

his counsel had been ineffective by conceding his guilt on the underlying felonies. The state court of appeals affirmed his conviction. Haynes' counsel filed for writs of review in the Louisiana Supreme Court, which were denied; however, Haynes did not file any *pro se* brief in that effort and his ineffective assistance claim was not reviewed by that court.

Haynes then filed applications for post-conviction collateral relief in state court, again raising the ineffective assistance claim. Finding that the trial strategy employed by Haynes' counsel was a well-considered effort to avoid a death sentence, the state court denied his application. After a premature federal application, Haynes sought a writ from the Louisiana Supreme Court which considered his ineffective assistance claim for the first time and denied same. Haynes then refiled in the court *a quo*.

The district court referred Haynes' writ application to a magistrate judge who filed a report recommending that it be denied. In his report the magistrate judge reviewed the state court opinions, which had examined Haynes' assertion using the two-pronged test established in <u>Strickland v. Washington</u>[2] for determining whether counsel was ineffective, and found that those opinions were not an unreasonable application of the <u>Strickland</u> standard.[3]

---

[2]  466 U.S. 668 (1984).

[3]  Citing <u>Kitchen v. Johnson</u>, 190 F.3d 698 (5th Cir. 1999).

The district court rejected the recommendation of the magistrate judge, finding that the state courts and the magistrate judge used the wrong standard in evaluating Haynes' claim. According to the district judge, the actions of Haynes' counsel in conceding partial guilt over Haynes' express objection resulted in the constructive denial of counsel, causing *per se* prejudice under the standard set forth in U.S. v. Cronic.[4] The district judge then granted Haynes a conditional writ of habeas corpus, stating that he is to be freed unless the State, within 180 days, initiates a new prosecution. That order was stayed pending the instant appeal.

## ANALYSIS

We are presented with the typical question faced in considering an ineffective assistance claim, *i.e.*, whether the applicant must establish both prongs of the test set forth in Strickland, or whether the second "prejudice" prong is presumed under the exception set forth in Cronic. This is a mixed question of fact and law that we review *de novo*.[5] Where, as here, the claim has been reviewed on the merits and denied by the state courts, we will grant the application only where "the state court's conclusions involved an unreasonable application of clearly established federal law as determined

---

[4] 466 U.S. 648 (1984) (issued the same day as the Strickland opinion).

[5] Childress v. Johnson, 103 F.3d 1221 (5th Cir. 1997).

by the Supreme Court."[6]

In Strickland the Supreme Court established the test that is generally to be applied in evaluating an ineffective assistance of counsel claim; namely, whether the applicant has established that (1) the performance of counsel was deficient, and (2) the deficient performance resulted in prejudice to the applicant.[7] In Cronic, however, the Court opined that there are some circumstances where the absence, actions, or inactions of counsel compromise the very reliability of the trial process. In such circumstances prejudice to the applicant is presumed because the defendant's sixth amendment right to counsel is actually or constructively denied.[8] Since issuance of the Strickland and Cronic opinions we have had numerous opportunities to address their teachings and to seek to define their contours, and have reached the conclusion that the Cronic constructive denial exception is very narrow and is rarely applicable.[9]

The sixth amendment right to effective assistance of counsel derives from the

---

[6] Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998) (quoting Nobles v. Johnson, 127 F.3d 409, 418 (5th Cir. 1997)).

[7] Strickland, 466 U.S. at 687.

[8] Cronic, 466 U.S. at 658-60.

[9] See, e.g., Gochicoa v. Johnson, 238 F.3d 278 (5th Cir. 2000); Jackson v. Johnson, 150 F.3d 520 (5th Cir. 1998); and Childress, 103 F.3d at 1229 ("The federal courts of appeal, including this one, have repeatedly emphasized that constructive denial of counsel as described in Cronic affords only a narrow exception to the requirement that prejudice be proved.").

8

defendant's fundamental right to a fair trial,[10] a goal best achieved by ensuring that the process involves vigorous partisan advocacy by both sides.[11] As the Cronic court pointed out, "[T]he adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of advocate.' The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."[12] The question before us is whether, by explicitly conceding his guilt on the underlying felonies from the beginning of the case, by not contesting the prosecution's evidence on those felonies, and by urging the jury to find him guilty of *nothing less* than second degree murder, counsel "fail[ed] to subject the prosecution's case to meaningful adversarial testing."[13]

---

[10] Strickland, 466 U.S. at 684. See also Pratt v. Cain, 142 F.3d 226 (5th Cir. 1998).

[11] Cronic, 466 U.S. at 655 (quoting Herring v. New York, 422 U.S. 853 (1975)).

[12] Id. at 656 (quoting Anders v. California, 386 U.S. 738 (1967)).

[13] Cronic, 466 U.S. at 659 (describing circumstances where the actions of defense counsel result in making the adversary process itself unreliable; thus, prejudice against the accused is presumed). In his briefs, many of which were filed *pro se* before appellate counsel was appointed for him, Haynes defines his claim primarily in terms of ineffective assistance of counsel. Our analysis, in turn, focuses on that issue and we do not herein address the broader and equally serious sixth amendment concerns that the facts of this case raise, *e.g.*, whether, by conceding partial guilt over Haynes' direct objection, counsel usurped the fundamental right of how to plead that is reserved for the accused; or whether the trial judge, by not informing Haynes of his right to self-representation, violated his fundamental rights as enumerated in Faretta v. California, 422 U.S. 808 (1972).

Where counsel acknowledges, in closing argument, the overwhelming weight of evidence that has been admitted against his client, even conceding his client's guilt, we have found that such an acknowledgment of the obvious may be a trial tactic that does not reach the level of ineffective assistance.[14] We have also found that questions implicating participation in illegal activities during defense counsel's direct examination of his own client did not result in ineffective assistance.[15]

Several of our sister circuits have addressed cases where counsel for the defendant has conceded at least partial guilt in the opening statement or closing argument, finding that such tactics do not result in *per se* prejudice.[16] In those cases,

[14] <u>United States v. Short</u>, 181 F.3d 620 (5th Cir. 1999) (concurring with the trial court's assessment that counsel's statements in closing argument were reasonable in light of the overwhelming evidence of guilt adduced at trial). <u>See</u> <u>also</u> <u>Underwood v. Clark</u>, 939 F.2d 473, 474 (7th Cir. 1991) ("Such acknowledgment can be a sound tactic when the evidence is indeed overwhelming (and there is no reason to suppose that any juror doubts this) and when the count in question is a lesser count, so that there is advantage to be gained by winning the confidence of the jury.").

[15] <u>Pratt</u>, 142 F.3d at 231-32.

[16] <u>See</u>, <u>e.g.</u>, <u>Trice v. Ward</u>, 196 F.3d 1151 (10th Cir. 1999) (no prejudice where counsel conceded guilt as to a rape charge accused had confessed to); <u>United States v. Wilks</u>, 46 F.3d 640 (7th Cir. 1995) (concession of guilt in opening statement was not prejudicial where accused did not object and told court he was satisfied with the performance of his counsel); <u>McNeal v. Wainwright</u>, 722 F.2d 674 (11th Cir. 1984) (no prejudice where the accused had confessed on tape and counsel conceded guilt). Several state cases reach the same result. <u>See</u>, <u>e.g.</u>, <u>State v. McNeill</u>, 485 S.E.2d 284 (N.C. 1997) (no prejudice when defense stipulated to stabbing and accused agreed to concession strategy) <u>and</u> <u>People v. Johnson</u>, 538 N.E.2d 1118 (Ill. 1989) (no prejudice

however, the accused had expressed prior agreement with the trial tactic of conceding guilt, especially to a lesser charge, or had already confessed guilt. The instant case presents no such agreement or confession. Indeed, despite the array of contrary evidence, Haynes maintains he is innocent, not only of the murder but of the underlying felonies as well, and he immediately and vigorously objected to the concessionary strategy employed by his counsel in the opening statement. The Kansas Supreme Court when faced with a case where the defendant vigorously objected to the court that he disagreed with his defense counsel's strategy of admitting guilt stated:

> Viewing [defense counsel's] conduct as part of a trial strategy or tactic is to ignore the obvious. By such conduct defense counsel was betraying the defendant by deliberately overriding his plea of not guilty. He not only denied [the defendant] the right to conduct his defense, but, as in Brookhart, it was the equivalent to entering a plea of guilty. . . . [Defense counsel] had no right to conduct a defense premised on guilt over his client's objection. If [defense counsel] could not accept Carter's rejection of such a defense, then he should have either proceeded with a defense acceptable to Carter or sought permission to withdraw as defense counsel.[17]

The impact upon the adversarial process of conceding guilt over the client's express objection was described by the Supreme Court of North Carolina in these terms:

> This Court is cognizant of situations where the evidence is so overwhelming that a plea of guilty is the best trial strategy. However, the

_____

when counsel conceded guilt to a crime to which the accused had confessed).

[17] Kansas v. Carter, 14 P.3d 1138, 1148 (Kan. 2000).

11

gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands. When counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.[18]

Here, the facts reflect defense counsels' considered decision to disregard Haynes' claim of innocence and to make no contest to any of the prosecution's case, other than the element of intent in the charge of first degree murder. In the opening statement co-counsel for Haynes expressly stated "the evidence will show that Brandon Haynes is guilty of second degree murder." He concluded by saying, as previously noted, that "[The evidence] is enough for second degree murder and that's what we are going to ask you to do at the end of the trial, come back with a verdict of second degree murder, no more, *no less*."

Counsel began by telling the jury, against Haynes' express objection and persistent assertion of innocence, that Haynes was guilty of all of the underlying

---

[18] State v. Harbison, 337 S.E.2d 504, 507 (N.C. 1985) (citing Wiley v. Sowders, 647 F.2d 642 (6th Cir. 1981)). Two other jurisdictions have reached the same conclusion based on similar facts. See Jones v. Nevada, 877 P.2d 1052, 1057 (Nev. 1994) (prejudice presumed where defense counsel improperly concedes his client's guilt) and New Hampshire v. Anthony Anaya, 592 A.2d 1142, 1147 (N.H. 1991) (requirement of prejudice not necessary where counsel over defendant's objection admitted to a lesser-included offense and "prevented any meaningful adversarial testing of the prosecution's case.").

felonies, each one particularly egregious, and was guilty of second degree murder. Counsel then advised the jury that the defense would not contest the prosecution's case on those felonies and, at the end of the trial, would ask that they convict Haynes of *nothing less* than second degree murder. We are not here presented with a case where counsel merely acknowledges what the evidence introduced already has established, or acknowledges up front some criminal activity that is not a fundamental part of the prosecution's primary charge. Rather, we have before us a case involving a conscious decision to acknowledge underlying felonies, felonies upon which the prosecution critically relied in asking the jury to make the inferences necessary to find Haynes guilty of first degree murder.

Further, counsel focused their questioning of the witnesses on the single issue they determined to challenge. As a result, although the prosecution did not rely on the concession to second degree murder, the evidence on Haynes' guilt as to those felonies went completely unchallenged.[19] Counsel for Haynes stated as much in closing, saying

---

[19] The prosecution appropriately, and to its credit, noted repeatedly in its rebuttal argument that just because Haynes' counsel conceded his guilt to second degree murder did not make him guilty, it was the evidence they adduced at trial that proved his guilt. Such assertions do not and cannot alter the fact that the evidence went unchallenged when introduced. It is impossible to determine how the defense counsels' failure to aggressively contest the prosecution's evidence on those charges impacted the weight the jury accorded that evidence, or whether counsels' concession of guilt on those felonies facilitated the jury's decision to infer he also intended to kill the young lady.

"Look at all the evidence. . . . It proves a lot of things. It proves a lot of things we didn't contest. . . . We did not cross examine any witness regarding the source of semen. The only issue we are contesting is whether or not Mr. Haynes intentionally killed the victim, Fang Yang. That is it. It is the only issue."

As the record makes clear, counsel appointed to represent Haynes were experienced public defenders and trial lawyers.[20] Similarly, the record reflects that their decision to focus on avoiding a first degree murder conviction, with the concomitant possibility of a death sentence, was a considered one borne out of their experience. We are cognizant that defense counsel may choose this course of action because they perceive a need to maintain credibility with the jury in their effort to avoid a sentence of death, and out of a belief that the admissible evidence would lead to conviction on those charges in any event. The sixth amendment does not require counsel to invent a defense or act in an unethical manner. It does, however, require counsel to put the prosecution's case to the test through vigorous partisan advocacy. "[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a

---

[20] In their colloquy with the court, counsel represented that one had been practicing law for twelve years and the other for ten years, with each having participated in numerous trials.

14

reasonable doubt."[21]

This is *not* a case of a defendant simply wanting to direct his defense; it is a case of a defendant staunchly maintaining his innocence to felonies that are the primary foundation of the prosecution's case, and from which spring the inferences necessary for the jury to find guilt of the greater charge. By asking the jury to find their client guilty of those felonies in their opening statement, counsel inappropriately lessened the prosecution's burden in leading the jury to make the inference he intentionally caused the victim's death. Absent the requisite partisan advocacy on such an integral aspect of the prosecution's case we cannot say that Haynes received the constitutionally mandated fair trial.

## CONCLUSION

In summary, we find that the specific facts of this case resulted in a constructive denial of counsel, and the standard set forth in Cronic is the appropriate standard by which Haynes' application for a writ of habeas corpus must be analyzed. We therefore conclude that the district court was correct in its analysis.

Accordingly, the judgment appealed is AFFIRMED.

---

[21] Cronic, 466 U.S. at 656-57 n.19.

EMILIO M. GARZA, Circuit Judge, dissenting:

This case requires us to continue the process of delineating the appropriate boundaries between the Supreme Court's decisions in *Strickland v. Washington*, 466 U.S. 668 (1984) and *United States v. Cronic*, 466 U.S. 648 (1984). The majority concludes that we should analyze Haynes' ineffective assistance of counsel claim under the standard set forth in *Cronic*. Under this standard, the defendant need not establish that his attorneys' conduct resulted in a prejudicial outcome. In reaching its conclusion, the majority argues that the concession of certain elements of a crime is not a trial strategy, but rather the constructive denial of counsel.

The majority opinion confuses the denial of counsel, which falls within the province of the *Cronic* exception, with ineffective assistance of counsel, which we evaluate under *Strickland*. Here, the defense attorneys' concessions were an integral part of their strategy and never resulted in either the actual or constructive denial of representation as the majority contends. As such, the majority errs by applying the standard set forth in *Cronic* to the facts of this case.

In contrast to the majority, I find based on substantial authority that defense counsels' concession of a lesser included offense did not result in a failure to submit the prosecution's case to meaningful adversarial testing. Instead, it was a tactical

decision, designed to provide Haynes with the best possible representation given the overwhelming evidence against him.  Because defense counsel did not abandon their client by completely conceding his guilt, I would require Haynes to establish both defective assistance of counsel and prejudice under the two-part analysis of *Strickland*.

The test for determining ineffective assistance of counsel under *Strickland* requires, first, that the defendant establish that the counsel's performance was deficient. *See Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994).  When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

If the defendant can overcome this burden, *Strickland* requires him or her to also establish that the deficient performance resulted in prejudice. *Id.* at 687.  The Supreme Court's decision in *Cronic* created a very limited exception to the application of *Strickland*'s two-part test for cases in which the defendant is denied completely the assistance of counsel.  The Court held that prejudice will be presumed if the defendant can show either that he or she (1) was actively "denied counsel at a critical stage of the trail" or (2) was constructively denied counsel because his attorney "entirely [failed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659.  While easily stated, the *Cronic* exception often has proven difficult to apply

-17-

(or not to apply) given the myriad of factual circumstances surrounding ineffective assistance of counsel claims.

Previous circuit court decisions have addressed the issue of when an admission of guilt by the defense constitutes constructive denial of counsel. Collectively, these decisions have erected a clear framework for distinguishing between the constructive denial of counsel and tactical concessions made by defense counsel at trial. Constructive denial of counsel occurs in cases in which the attorney concedes the only factual issues in dispute. In such cases, courts have applied the *Cronic* exception, reasoning that the government has not been held to its burden of persuading the jury that the defendant was guilty of the charged crime.[22] When defense attorneys concede the only factual issues in dispute, they have ceased to represent their client. This constructive abandonment of their client produces the same types of structural defects, as well as the extreme risk of injustice, as the actual denial of counsel.

The second group of decisions addresses those situations in which defense counsel only admits the defendant's guilt for lesser included offenses in order to win

---

[22] *United States v. Swanson,* 943 F.2d 1070 (9th Cir. 1991) ( "A lawyer who informs the jury that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed to subject the prosecution's case to meaningful adversarial testing."); *Wiley v. Sowders*, 647 F.2d 642, 650-51 (6th Cir. 1981) (decided prior to *Cronic* and *Strickland*, but reaching a similar conclusion).

credibility with the jury or highlight the lack of evidence in other areas.   In these examples, the circuit courts have found these partial concessions to be a tactical strategy and not a denial of the right to counsel.  Therefore, they have analyzed them under the two-part *Strickland* test.[23]  These decisions reason that while attorneys may not completely surrender their client's case, they may make tactical concessions in order to best represent their client.  In other words, admitting certain issues at trial, even without the client's consent, may result in ineffective assistance of counsel, but it is assistance nonetheless.  While acknowledging the potential dangers posed by these admissions of guilt, the existing cases have, however, required the defendant to establish prejudice in cases where the defense attorney makes a decision to concede guilt for lesser offenses in order to obtain the favorable outcome on the principal charge.  In doing so, they have recognized the fact that, in many instances, the evidence

---

[23] *United States v. Short*, 181 F.3d 620, 624-5 (5th Cir. 1999)(counsels statements, which did not admit guilt, but which implicated the defendant, were reasonable in light of the overwhelming evidence presented at trial); *Lingar v. Bowersox*, 176 F.3d 453, 458 (8th Cir. 1999)("we conclude the decision to concede guilt of the lesser charge of second-degree murder was a reasonable tactical retreat rather than a complete surrender"); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)(Posner, J.)(defense counsel's concession during closing arguments of a lesser included offense was "a sound tactic when the evidence is indeed overwhelming . . . and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury."); *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984)(McNeal's attorney's statements conceding manslaughter were tactical and did not constitute a forced plea);

is so overwhelming that the most favorable result is not an acquittal, but a reduced sentence. If such concessions ultimately prove to be incorrect and prejudicial to their client, there is a remedy under the usual *Strickland* analysis for ineffective assistance.

The majority, in essence, maintains that this case is analogous to those decisions finding a constructive denial of counsel. Specifically, they find that defense counsel failed to challenge any element of the prosecution's case with the notable exception of the intent element of the first degree murder charge. Pursuant to their reasoning, the decision to concede second degree murder and to focus solely on the intent element resulted in Haynes essentially receiving no assistance from his counsel at trial.

This reasoning unnecessarily blurs the distinction between the constructive denial of counsel and ineffective assistance of counsel. If Haynes' attorneys had stated, against their client's wishes, that he had decided to plead guilty, that action would have amounted to a forced guilty plea. The prosecution's case would never be tested and Haynes would have been deprived of his presumption of innocence. This, however, is not what happened here. Haynes' attorneys never conceded that he was guilty of first degree murder. Rather, they acknowledged that the evidence on particular elements of the offense was overwhelming. Haynes' attorneys remained active at trial, probing weaknesses in the prosecution's case on the issue of intent. Ultimately, their strategy

proved effective in avoiding the death penalty for their client.

In our decision in *Short*, we recognized the potential benefits of a concession strategy. We stated: "counsel took the reasonable strategic approach of trying to establish his credibility with the jury and enhance his chances that the jury would accept his arguments on the more serious counts." *Short*, 181 F.3d at 625. We should not turn an inquiry about the constructive denial of counsel into an evaluation of the defendant's trial strategy. Here, the defense adopted a strategy to admit a lesser included offense, but it was a defense nonetheless. The proper inquiry is the effectiveness of such a tactic, and not its existence.

The majority attempts to distinguish those cases concluding that partial concessions of guilt are not denials of assistance of counsel by arguing first that the concessions in this case were made at a different stage of the proceedings. They also emphasize the fact that Haynes maintained his innocence throughout the trial whereas, in other cases, the defendant previously had confessed. Lastly, they focus on the fact that the defense adopted this strategy over the express objection of the defendant. These arguments basically amount to a claim that the decision to pursue a concession strategy in the instant case was more aggressive than in other cases. The distinctions relied upon by the majority, however, ignore the fundamental issue in this case. We must ultimately decide whether, by adopting such a strategy, Haynes' attorneys ceased

-21-

to represent him at trial.

The majority makes much of the fact that defense counsel opted to concede Haynes' guilt in their opening statements and tailored their questioning of witnesses throughout trial to the lack of evidence on the intent issue. Again, I believe that the timing of admissions is a question of strategy properly evaluated under *Strickland*. Generally, the defense will wait until closing arguments to make any admissions. If, however, the defense counsel senses that there is an advantage to be gained, such as preempting the prosecution's case, by conceding certain factual elements at the outset of the trial, this does not suddenly transform a trial strategy into the constructive denial of counsel. The timing of the concessions, like the decision to make the admissions, itself, is a tactical choice. Choosing to employ a radical tactic in the opening arguments may be risky, but Haynes' attorneys could have reasonably concluded that this course would give their client the best opportunity to escape the death penalty. If, after reviewing the evidence, we found this decision to be overly aggressive and if we also concluded that, but for this decision, the outcome of the trial probably would have been different, only then should we grant Haynes a new trial.

The majority also focuses on the fact that Haynes continues to maintain his innocence. Again, this conflates the constructive denial of counsel with ineffective assistance. A concession strategy is appropriate in cases where the overwhelming

weight of evidence is against the defendant. This is the case whether the defendant has previously confessed to the crime or has steadfastly maintained his or her innocence. Haynes' attorneys had to consider the totality of the evidence, including their client's continuing declaration of innocence, in order to reach the decision to concede the lesser included offense of second-decree murder. What is crucial is that in making this strategic choice, they never ceased to represent Haynes. Rather, they pursued a strategy that was the most advantageous for their client given the circumstances. If the evidence presented at trial did not warrant the approach taken, the two-part *Strickland* analysis provides Haynes with a remedy for such ineffective assistance.

Moreover, by not requiring Haynes to show prejudice, the majority creates the potential for grossly inconsistent outcomes. In most instances, if the evidence establishing a lesser included offense was not overwhelming enough to warrant a concession, the defendant can easily establish that his counsel's performance was prejudicial. In cases such as this one, where the trial strategy probably benefitted the defendant by mitigating the substantial evidence arrayed against him, the defendant would have difficulty making the requisite showing under *Strickland*. If the majority's reasoning is employed, courts will likely find a defendant was denied counsel in cases where the defendant actually benefitted from a concession strategy.

The majority also focuses on the fact that Haynes withheld his consent to the

defense strategy. Again, this begs the question of whether Haynes was denied counsel at trial. The lack of Haynes' consent to a particular strategy is simply not relevant to the issue of whether his attorneys abandoned him at trial. It is, however, important in ascertaining whether in representing him, Haynes' attorneys did so effectively. The majority again errs by equating issues that concern the effectiveness of counsel with the constructive denial of counsel. The decision to pursue a trial strategy without Haynes' consent, like the decision to pursue the concession strategy, is appropriately evaluated under *Strickland*.

Applying the two-part *Strickland* test to the facts of this case, I find that Haynes' attorneys did not render ineffective assistance. The prosecution had both videotape of the defendant and eyewitness testimony placing Haynes at the crime scene. DNA analysis established that his semen was found in the victim. The police found a knife with the victim's blood on it. The police also located the victim's wallet in Haynes' home. Given the evidence, the strategy defense counsel adopted likely succeeded in obtaining the most favorable outcome for their client.

It is a plausible, however, that their failure to obtain Haynes' consent to the strategy could constitute deficient performance under *Strickland*. Even assuming, however, that proceeding with this line of defense without Haynes' consent constituted deficient performance, the result of the concession strategy was not prejudicial to the

defendant per se.  For Haynes to establish prejudice, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Haynes has failed to establish that without the concession strategy, he would have been acquitted of first degree murder.  Pervertedly, Haynes has succeeded in obtaining a new trial.  In doing so, however, he has rejected the one strategy that saved his life.  Today, he is one step closer to his executioner.

For the foregoing reasons, I would REVERSE the judgment of the district court.